IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **OHIO SECURITY INSURANCE COMPANY,** | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. **3:21-CV-1667-L** |
| **DALLAS REMODELING GROUP, LLC,** | § § § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiff's Motion for Entry of Final Default Judgment Against Defendant ("Motion") (Doc. 8), filed November 10, 2021. After careful consideration of the Motion, pleadings, record, evidence, and applicable law, the court **grants** the Motion (Doc. 8).

### I.  Background

On June 19, 2021, Ohio Security Insurance Company ("OCIC" or "Plaintiff") filed its Original Complaint ("Complaint") against Dallas Remodeling Group, LLC ("DRM" or "Defendant") to recover outstanding premiums owed on several commercial insurance policies (the "Policies") it issued to Defendant from 2018 to 2020. In the Complaint, Plaintiff alleged Defendant breached its contractual obligations by refusing to pay the policy premiums it owed to Plaintiff, notwithstanding repeated demands for payment. Plaintiff asserted claims for suit on a sworn account, breach of contract, and quantum meruit, pleaded in the alternative. In addition, Plaintiff requested an award of attorney's fees, costs, prejudgment interest, and postjudgment interest. After default was entered against Defendant on October 26, 2021, Plaintiff moved for entry of a default judgment on its claims against Defendant for nonpayment of the outstanding premiums under the Policies.

II.     Analysis

    A.     **Legal Standard – Motion for Default Judgment**

A party is entitled to entry of a default by the clerk of the court if the opposing party fails to plead or otherwise defend as required by law. Fed. R. Civ. P. 55(a). Under Rule 55(a), a default must be entered before the court may enter a default judgment. *Id.*; *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). The clerk of court has entered a default against Defendant (Doc. 6). Based upon the pleadings and information in the record, the court finds that Defendant is not a minor, incompetent, or member of the United States military. Defendant, by failing to answer or otherwise respond to Plaintiff's Complaint, has admitted the well-pleaded allegations of the Complaint and is precluded from contesting the established facts on appeal. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (citations omitted). Stated differently, a "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 496 (5th Cir. 2015) (citation omitted). Accordingly, Defendant may not contest the "sufficiency of the evidence" on appeal but "is entitled to contest the sufficiency of the complaint and its allegations to support the judgment." *Id.* Based on the well-pleaded allegations in Plaintiff's Complaint, which the court accepts as true, and the record in this action, the court determines for these reasons and the reasons herein explained that Defendant is in default, and that Plaintiff is entitled to a default judgment on its claim for breach of contract.

    B.     **Damages**

"A default judgment is a judgment on the merits that conclusively establishes the defendant's liability. But it does not establish the amount of damages." *United States v. Shipco Gen.*, 814 F.2d 1011, 1014 (5th Cir. 1987) (citations omitted). In the context of a default judgment, "[d]amages may not be awarded without a hearing or a demonstration by detailed affidavits

**Memorandum Opinion and Order – Page 2**

establishing the necessary facts." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979); however, "[w]he[n] the amount of damages and/or costs can be determined with certainty by reference to the pleadings and supporting documents and where a hearing would not be beneficial, a hearing in unnecessary." *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 2009).

Plaintiff seeks $160,833.47 for the amount of the outstanding premiums under the Policies. Plaintiff's pleadings and evidence establish the existence of a valid contract with Defendant (the Policies)[1]; that by entering into the Policies with Plaintiff, Defendant accepted insurance services from Plaintiff; that, pursuant to the Policies' terms, initial premiums for each of the Policies are subject to audit based on the actual exposure during the effective dates of coverage, and that these audits can result in additional or return premiums; that Plaintiff performed an audit of Defendant in accordance with the provisions outlined in the Policies; and that the audit indicated that an additional premium of $160,833.47 was due from Defendant. *See* Ex. A5 to Pl.'s Mot. Default J. (Doc. 8-6).

Plaintiff's pleadings and evidence also establish that Plaintiff requested payment from Defendant of the overdue premiums, but Defendant failed to submit payment or provide any explanation for its continued failure to pay the amount owed (*see* Ex. A4 to Pl.'s Mot. Default J. (Doc. 8-5)); that Defendant breached its contractual obligation under the Policies by failing to make the required premium payments; and that, as a result of Defendant's failure to pay premiums contractually owed, Plaintiff has suffered damages in the amount of $160,833.47.[2]

---

[1] The Policies are: Policy No. BKS (19) 59 18 74 54, effective October 13, 2018 to October 13, 2019; Policy No. BKS (20) 59 18 74 54, effective October 13, 2019 to October 13, 2020; and Policy No. BAS (20) 59 18 74 54, effective October 13, 2019 through October 13, 2020. *See* Exs. A1-A3 to Pl.'s Mot. Default J. (Doc. 8-2 to 8-4).

[2] In Texas, the elements for breach of contract are: (1) a valid contract; (2) the plaintiff's performance of his or her contractual obligations; (3) breach by the defendant; and (4) damages caused by the breach. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018).

**Memorandum Opinion and Order – Page 3**

Defendant is, therefore, liable for breach of the Policies, and the court finds that the amount requested by Plaintiff ($160,833.47) is supported by the evidence. Because the amount of damages can be determined with certainty by reference to the pleadings and supporting documents, the court concludes a hearing is unnecessary. Accordingly, Plaintiff is entitled to recover from Defendant **$160,833.47** in actual damages.

### C. Attorney's Fees

Plaintiff seeks $4,990 in reasonable attorney's fees as well as costs. As the prevailing party on its breach of contract claim, Plaintiff is entitled to recover reasonable and necessary attorney's fees. Tex. Civ. Prac. & Rem. Code § 38.001(8); *Kona Tech. Corp. v. Southern Pac. Transp. Co.*, 225 F.3d 595, 614 (5th Cir. 2000) ("Under Texas law, when a prevailing party in a breach of contract suit seeks attorneys' fees, an award of reasonable fees is mandatory under Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8)."). In support of its request for attorney's fees, Plaintiff submits the affidavit of Sheila Tan. *See* Ex. C to Pl.'s Mot. Default J. (Doc. 8-8). According to Ms. Tan's affidavit and the exhibits attached to it, she, along with Catherine L. Hanna, both of the AV-rated law firm Hanna & Plaut, LLC, represented Plaintiff in connection with this civil action. According to the affidavit, Ms. Hanna has been licensed in State of Texas to practice law since 1989. Although not stated in Ms. Tan's affidavit, the court takes judicial notice pursuant to Federal Rule of Evidence 201 that Ms. Tan has been licensed to practice law in the State of Texas since November 2, 2012. *See* www.TexasBar.com. The court also notes that the billing invoices submitted in support of Ms. Tan's affidavit list Noah D. Lombardo as a third attorney at Hanna & Plaut, LLC, who represented Plaintiff in this case. Although not stated in Ms. Tan's affidavit, the court takes judicial notice pursuant to Federal Rule of Evidence 201 that Mr. Lombardo has been licensed to practice law in the State of Texas since May 2, 2016. *See* www.TexasBar.com.

According to Ms. Tan's affidavit, her hourly billable rate is $200 per hour, Ms. Hanna's billable rate is $250 per hour, and the rate of the paralegal assisting them is $100 per hour. The invoices reflect that Mr. Lombardo's hourly rate is $200 per hour. Ms. Tan asserts, and the court agrees, that the hourly rates for the services performed in this case are reasonable, as the hourly rates are within the range of the usual and customary rate charged by attorneys and paralegals in the Dallas legal community with similar ability, competence, experience, and skill as that of Plaintiff's attorneys and paralegal for the services performed in cases of this nature. Based on its extensive experience in awarding attorney's fees in numerous prior cases over the years, the court concludes that the rates charged are below the customary and usual rate charged by attorneys in the Dallas legal community with similar ability, competence, experience, and skill as that of Plaintiff's attorneys for the services performed in cases of this nature.

The invoices filed in support of Ms. Tan's request show that the attorneys and paralegal expended a total of 28.60 hours working on this case. The amount of time expended is reasonable, given the debt sought to be collected and Plaintiff's counsel successfully prosecuting this case and obtaining a default judgment. Further, although Ms. Tan does not specifically state in her affidavit that counsel exercised billing judgment, the court's examination of the invoices reveals two entries that state there was "no charge" for the services rendered, indicating that certain time was written off as either unproductive, excessive, or redundant. *See generally Hill v. Schilling*, No. 3:07-CV-2020-L, 2022 WL 1321548, at *7 (N.D. Tex. May 3, 2022) (noting that "the applicant [seeking attorney's fees] bears the burden of establishing a reasonable number of hours expended and proving that billing judgment was exercised.") (citation omitted). In addition, in light of the court's determination that rates charged by Plaintiff's counsel are below the customary and usual rates charged by attorneys in the Dallas legal community with similar ability, competence, experience, and skill as that of Plaintiff's attorneys, it concludes that the requirement of an applicant to

**Memorandum Opinion and Order – Page 5**

demonstrate she exercised billing judgment has been met. Accordingly, the court determines that Plaintiff is entitled to an award of attorney's fees in the amount of **$4,990**, which is the amount requested.

### D. Prejudgment and Postjudgment Interest

Prejudgment interest rates are governed by state law in diversity cases. *Boston Old Colony Ins. Co. v. Tiner Assocs. Inc.*, 288 F.3d 222, 234 (5th Cir. 2002). Because this is a diversity case in which Texas law applies, Texas law governs prejudgment interest. *Arete Partners, L.P. v. Gunnerman*, 643 F.3d 410, 412 (5th Cir. 2011). "The Texas Supreme Court has recognized two separate bases for the award of prejudgment interest: (1) an enabling statute; and (2) general principles of equity." *International Turbine Servs., Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 499 (5th Cir. 2002) (quoting *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998)). "[S]tatutory prejudgment interest applies only to judgments in wrongful death, personal injury, property damage, and condemnation cases." *International Turbine Servs., Inc.*, 278 F.3d at 499. Because the claims in this case do not fall within the statutory provisions, prejudgment interest in this case is governed by Texas common law. *Id.* "Texas common law allows prejudgment interest to accrue at the same rate as postjudgment interest on damages awarded for breach of contract." *Id.* When, as here, an interest rate is not specified in the parties' contract, prejudgment interest is calculated based on the statutory rate for postjudgment interest provided in section 304.003 of the Texas Finance Code. *Id.* Section 304.003 of the Texas Finance Code provides, in pertinent part, that the postjudgment interest rate is "(1) the prime rate as published by the Board of Governors of the Federal Reserve System on the date of computation"; [or] (2) "five percent a year if the prime rate as published by the Board of Governors of the Federal Reserve System . . . is less than five percent[.]" Tex. Fin. Code Ann. § 304.003(c)(2). The current

prime rate is 5.50%, which is greater than five percent. Accordingly, the prejudgment interest rate that the court will apply is 5.50% per annum.

The Texas Finance Code not only sets the rate of prejudgment interest, but also states that prejudgment interest begins to accrue on the earlier of (1) 180 days after the date the defendant received written notice of the claim or (2) the date suit is filed, and "end[s] on the day preceding the date judgment is rendered." Tex. Fin. Code Ann. § 304.104.  Prejudgment interest accrues only on the damages awarded and not on Plaintiff's award for attorney's fees. *See Cushman & Wakefield, Inc. v. Fletcher*, 915 S.W.2d 538, 547 (Tex. App.—Dallas 1995, writ denied) (holding prejudgment interest is not recoverable on attorney's fees awarded).

Here, Plaintiff provided written notification to Defendant of its outstanding account balance in the amount of $160,833.47 on October 9, 2020. Thus, the court will calculate prejudgment interest on the amount owed by Defendant for the outstanding Policy premiums at a rate of **5.50%** from April 7, 2021 (180 days after notice), to September 7, 2022, and award Plaintiff prejudgment interest in the amount of **$12,553.82.**

Finally, federal courts award postjudgment interest pursuant to 28 U.S.C. § 1961. The statute grants interest "from the date of the entry of the judgment" at a rate "equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding . . . the date of the judgment." 28 U.S.C. § 1961(a). Postjudgment interest compounds annually and is "computed daily to the date of payment." *Id.* § 1961(b). The principal for calculating post-judgment interest is "the entire amount of the final judgment," including attorney's fees, costs, and prejudgment interest. *Fuchs v. Lifetime Doors, Inc.*, 939 F.2d 1275, 1280 (5th Cir. 1991). The postjudgment interest amount for the calendar week preceding the date of judgment is 3.48 percent. United States District Court for the Northern District of Texas, Publications - Post Judgment Rate (September 8, 2022), http://www.txnd.uscourts.gov/publications/pjrate.html (reporting that the

**Memorandum Opinion and Order – Page 7**

current postjudgment interest rate from September 5, 2022, to September 11, 2022 is 3.48 percent). Postjudgment interest will apply to the total amount of the judgment and will be calculated from the date judgment is entered at the applicable federal rate of 3.48% until it is paid in full.

### III.  Conclusion

For the reasons explained, Plaintiff's Motion for Entry of Final Default Judgment Against Defendant (Doc. 8) is **granted**. Accordingly, the court will enter a default judgment in favor of Plaintiff in the amount of **$160,833.47** in actual damages, plus **$12,553.82** in prejudgment interest on this amount calculated at a rate of **5.50%** per annum from April 7, 2021, to September 7, 2022; reasonable attorney's fees in the amount of **$4,990**, and postjudgment interest on the entire amount of the judgment **($178,377.29)** at the current federal rate of **3.48%** per annum from the date of judgment until it is paid in full. The court also taxes all reasonable and allowable costs against Defendant. All other relief not expressly granted is **denied.** In accordance with Rule 58 of the Federal Rules of Civil Procedure, a default judgment will issue by separate document.

**It is so ordered** this 8th day of September, 2022.

Sam A. Lindsay
United States District Judge